IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 300 W. SIBLEY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-CV-05675 |
| | ) | |
| VILLAGE OF DOLTON an Illinois Municipality; | ) | Judge Rebecca R. Pallmeyer |
| RONNIE LEWIS, individually and in his official | ) | Magistrate Judge Sidney I. Schenkier |
| capacity as Village Mayor; JUDITH EVANS, | ) | |
| individually and in her official capacity as Village | ) | |
| Clerk; BERT HERZOG, individually and in his | ) | |
| Official capacity as Village Administrator; | ) | |
| DONALD HOARD, individually and in his official | ) | |
| capacity as Building Commissioner; and | ) | |
| BILLY MORGAN, individually and in his official | ) | |
| capacity as Housing Director, | ) | |
| | ) | |
| Defendants | ) | |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, 300 W. Sibley, LLC, an Illinois corporation, pro se, and presents its Complaint at Law, and in support thereof, complains as follows:

### *NATURE OF THE ACTION*

1. This is an action under Sections 1981, 1983 and 1985 of the United States Code to correct unlawful practices on the basis of race and individualized animus and to provide appropriate relief to 300 W. Sibley, LLC ("300 W. Sibley") for having been and continuing to be subjected to denial of the enjoyment of land in violation of equal protection and due process rights guaranteed under the Fourteenth Amendment to the U.S. Constitution.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1343, and 1345.

The unlawful practices alleged below were committed in Cook County, Illinois a county within the jurisdiction of the United Stated District Court for the Northern District of Illinois, Eastern Division.

3.      Venue is proper under 28 U.S.C. Sec. 1391(b) in that all of the alleged acts occurred and all parties reside or resided within the State of Ilinois, County of Cook, at all relevant times.

## THE PARTIES

4.      Plaintiff 300 W. Sibley, LLC, is an Illinois corporation and corporate citizen of the United States.

5.      Defendant RONNIE LEWIS ("Lewis") was the duly elected mayor of the Village of Dolton, 14014 Park Avenue, Dolton, Illinois, and was the chief executive officer of the Village of Dolton at all relevant times referenced herein. From May 2009 through March 2013, Lewis engaged in the conduct complained of in the course and scope of his employment and is sued in his individual and official capacity. Lewis engaged in a pattern of intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of Plaintiff s property and property rights in violation of Plaintiff's Constitutional rights.

6.      Defendant JUDITH EVANS ("Evans") was the duly elected Village Clerk of the Village of Dolton, 14014 Park Avenue, Dolton, Illinois, and held this position at all relevant times herein. From may 2009 through November 2012. Evans engaged in the conduct complained of in the course and scope of her employment and is sued in her individual and official capacity. Evans engaged in a pattern of intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of the subject property in violation od Plaintiff's Constitutional rights. Evans sanctioned, condoned and ratified a pattern

intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of Plaintiff's property and property rights in violation of Plaintiff's Constitutional rights.

7. Defendant BERT HERZOG ("Herzog") was the duly appointed Village Manager of the Village of Dolton, 14014 Park Avenue, Dolton, Illinois, and held this position at all relevant times referenced herein. From May 2009 through November 2012, Herzog engaged in the conduct complained of in the course and scope of his duties as Dolton Village Manager and is being sued in his individual and official capacity. Herzog sanctioned, condoned and ratified a pattern intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of Plaintiff s property and property rights in violation of Plaintiff's Constitutional rights.

8. Defendant DONALD HOARD ("Hoard") is the duly appointed Building Commissioner of the Village of Dolton, 14014 Park Avenue, Dolton, Illinois, and held this position at all relevant times referenced herein. From May 2009 through November 2012, Hoard engaged in the conduct complained of in the course and scope of his duties as Dolton Building Commissioner and is being sued in his individu.ai and official capacity. Hoard sanctioned, condoned and ratified a pattern intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of Plaintiff s property and property rights in violation of Plaintiff's Constitutional rights.

9. Defendant BILLY MORGAN ("Morgan") was the duly appointed Housing Director of the Village of Dolton, 14014 Park Avenue, Dolton, Illinois, and held this position at all relevant times referenced herein. From May 2009 through November 2012, Morgan engaged in the conduct complained of in the course and scope of his duties as Dolton Housing Director and is

being sued ·in his individual and official capacity. Morgan sanctioned, condoned and ratified a pattern intimidation and extortion causing the wrongful denial of Plaintiff's business licenses and peaceful use and enjoyment of Plaintiff's property and property rights in violation of Plaintiff's Constitutional rights.

10. Defendant Village of Dolton is an Illinois municipal corporation and as such is responsible for the policies, practices and customs of Dolton's administrative offices, directors and employees as well as those of the Mayor, the Clerk and their respective offices. The Village of Dolton was and or is the employer of each of the Defendants. The Village of Dolton is responsible for the acts of the Defendant Mayor, the Defendant Clerk, and Defendants Herzog, Hoard and Morgan while employed by the Village of Dolton and while acting within the scope of their employment.

11. At all times relevant to this action, each of the named defendants acted in the scope of employment, and under the color of the laws, regulations and customs of the State of Illinois. Each defendant's actions constituted "state action" as defined under federal law.

## STATEMENT OF FACTS

12. On or about January 2009, Regina Evans and Ronald Evans ("Evans'") were co-owners of the Premiere Entertainment Company, which ran a concert/bar/entertainment venue at 300 West Sibley, Dolton, Illinois. The Evans' were tenants of Plaintiff at the aforesaid location.

13. Said venue operated for several years in the Village of Dolton hosting various events under purportedly PPA and Liquor licenses. Liquor was sold on the premises and concerts tickets were sold for the events.

14. On or about January, 2009 the Evans' fell behind in their rent to Plaintiff and Plaintiff agreed to allow them out of their lease after they hosted a final event in May, 2009 which

proceeds thereof were to go to back rent. Plaintiff had another tenant lined up to take the premises and operated the commercial space in a similar capacity as it had been operated for years.

14. Plaintiff secured the new tenant and negotiated a new lease at $25,000 per month in rent for the new tenant to take possession when the Evans' left in May, 2009.

15. When the Evans' had their final event in May, 2009 they reneged on their promise to pay the back rent to Plaintiff and Plaintiff then filed suit against them. Meanwhile, the new tenant began to implement the first stages of its business model for the premises which consisted of an Italian version of a "Chuckee Cheese." The venue would serve Italian food and provide rides and games for families and children visiting the venue. The new tenant formed the enterprise "Go Bonkers Now" ("GBN") as the business entity to run the aforesaid venue.

16. Plaintiff and agents of GBN began to seek the necessary permits and licenses for the aforesaid operation from the Village of Dolton. Plaintiff did not see there was likely to be any issue with obtaining the licenses and permits as the business model of GBN was similar to the previous use of the property, but more family oriented and less of a potential adverse impact on the community than a concert venue.

17. Around the same time GBN and Plaintiff were reaching out to officials at the Village of Dolton, Plaintiff brought suit against the Evans' for the breach of their agreement and back rent. Plaintiff's agent, Robert Michaels ("Michaels") was told by various members of the community and agents of the Village of Dolton that the Evans' were friends of the administration and that Plaintiff should "drop its suit" or deal with the consequences.

18. One individual, Mr. Nitchoff, specifically told Michaels that he knew all of the politicians in Dolton and that Plaintiff would never get a business license for the new business at the subject

premises since he was "connected" to the administration and if no licenses were issued, Plaintiff would not be able to keep up with the taxes and other financial obligations associated with the property because Plaintiff would never have a tenant for the commercial space. Plaintiff refused to drop the suit against the Evans' and dismissed the threats.

19. Around the beginning of June, 2009, an agent of GBN met with Donald Hoard, the Village of Dolton Building Inspector. They did a walkthrough of the premises and Mr. Hoard stated that GBN needed several permits to conduct cleaning and clearing out of the previous tenant's property. The agent of GBN discovered through his conversations with Mr. Hoard that Mr. Nitchoff had spoken with Mr. Hoard about preventing GBN from moving forward with their renovation of the property. Michaels attempted to speak with Hoard about the issue but Hoard hung up on him when Michaels indicated Hoard did not cite any Village Ordinances or State Law that prevented GBN from proceeding with the cleanup of the space.

20. In June, 2009 a meeting was held with Plaintiff, GBN agents and Billy Morgan, Ms. Levison and Mr. Herzog from the Village of Dolton. At said meeting the Village agents stated that only the front end of the premises could be opened but the main portion of the premises required a zoning change. Michaels was confused since the zoning of the property had not changed since the previous operation and no zoning changes had been implemented by the Village of Dolton. Further confusing was the need for a zoning change for only one part of a continuous building on the property. Michaels further questioned how a "hip-hop and rap" concert venue could operate by the Evans' for years under the existing zoning but an Italian food-family-oriented entertainment restaurant required different zoning. The Village officials could not provide Michaels or the agents of GBN an answer.

21. GBN and Plaintiff continued to request meetings with officials at the Village of Dolton. On several occasions, representatives of Plaintiff and GBN waited outside the office of Village Clerk Judith Evans to clarify the zoning issue (the aforesaid where informed that Evans was in charge of zoning). Ms. Evans refused to grant a meeting on several occasions despite nobody being in the office, and when she would communicate with GBN or Plaintiff, she refused to say what was wrong with the zoning or how GBN could request a zoning change. At one point Evans informed GBN's representative that the documentation to submit for the requested zoning change "were not available" When GBN's representative requested the Village's zoning regulations be provided Evans stated "it isn't available to the general public."

22. GBN and Plaintiff then submitted FOIA requests upon which the Village reluctantly provided the requested zoning information at a cost of .$25 per page. As 2009 progressed, GBN and Plaintiff submitted further documentation and license applications to the Village, a GBN representative was instructed by Evans and Hoard that said documentation was "lost" by the Village and nowhere to be found.

23. In late 2009, GBN met with the Mayor's Chief of Staff (Mr. Mogan) to try and secure the necessary licenses and permits to keep the project moving forward. Mogan informed GBN that no liquor would ever be approved for that location and the more GBN pushed the issue they would "be shut down permanently."

24. Mr. Mogan further informed GBN's representative that "black people didn't like Italian restaurants" and since GBN's representative was black, "you have been a black man all your life, when was the last time you knew of a nigger sitting down to have pasta and wine for dinner?"

25. Eventually in late 2009, the Village Attorney, Levison allowed GBN to continue construction within the facility but informed GBN and Plaintiff that amusement rides and

construction of such were in violation of state law and the required permits were not obtained. GBN was instructed to pay various fines to move forward with the project and GBN again went to the Village to pay the unsubstantiated fines. At the Village, several individuals called GBN's representative a "back stabber" and several people in the office began laughing. Plaintiff then inquired with the state regulatory office regarding the amusement rides and was instructed that the construction did not violate any state or village law and that the fines were erroneous.

26. Throughout 2010 GBN and Plaintiff continued to go to the Village of Dolton to obtain the license needed to open the facility. Both GBN and Plaintiff visited the Defendants over 25 times and to submit whatever paperwork was required, pay whatever fee was required and doing what had to be done to complete and open the facility. At every attempt representatives (including the owner) of GBN and Plaintiff were ignored, re-directed and stonewalled at every attempt, application and submission regarding the premises.

27. That in 2010, unannounced, Mayor Lewis, Ms. Levinson and Mr. Hoard appeared at the subject property and Mayor Lewis ordered Mr. Hoard to completely "shut down" the entire project.

28. That as a result of the continued and ongoing actions of the representatives of the Village of Dolton, GBN was forced to withdraw from the project and abandon its lease with Plaintiff as it had run out of money attempting to open the aforementioned business model and informed Plaintiff that the Village Officials would never allow the property to be used for any restaurant or entertainment facility.

29. In late 2010, Plaintiff obtained a new potential tenant with aspirations of a similar business model to GBN. Plaintiff was approached by an individual who informed Plaintiff that if it again

would re-consider dropping its lawsuit against the Evans', "all of their problems would go away and they could open whatever they want." Plaintiff again refused.

30. Plaintiff's new prospective tenant, Dwayne Carter ("Carter") and Plaintiff continued to approach Village Officials throughout 2011 and 2012 to obtain the licenses needed to open the facility. They were again met with the same tactics and obstruction as GBN previously.

31. Carter was instructed to pay $3,500 to the brother of Evans to help secure a license and he complied. Michaels was solicited to pay $2,000 for consultant fees to another individual who claimed to represent the Village to get the licenses. The Village continued to deny, refuse and disallow any licenses to be issued.

32. In the winter of 2012, Carter and Plaintiff repeatedly sought meetings with the Mayor and went to the Village Hall over 20 times to try and see what had to be done to obtain what was needed to open the facility. They were turned away at every chance.

33. On or about February, 2013, Mayor Lewis instructed Carter to communicate directly with an individual known as "Mr. Rickey." Mr. Rickey indicated he was authorized to negotiate on behalf of the Mayor. Mr. Rickey told Carter and Michaels at several meetings that the Mayor indicated that the facility could open if the right "recompense" was paid (the exact dollar amount to be determined) and that Mr. Rickey was included as a partner in the operation.

34. Further in February 2013, Carter met with the Mayor and Mayor Lewis was abrasive and told Carter "they ain't never mother fucking gonna open, fuck that white mother fucker."

35. At a final meeting in February, 2013, Michaels was told by Mr. Rickey that the "Mayor will be no problem" and "he'll take care of Lewis" out of his partnership interest in the business to secure the ability to open the facility. Mr. Rickey again reached out to Plaintiff to try and secure the deal since Mayor Lewis lost his election and wanted to have security in the business before

he leaves. Plaintiff refused the deal. Carter informed Plaintiff that it didn't appear the Village was never going to allow the subject commercial space to operate due to the past several years of a multitude of attempts and obstructions at every turn. Plaintiff thereafter decided in February, 2013, that after years of attempts, obstruction, unethical solicitation, lost documentation/ applications, denial of meetings, denial of access to the licensing procedures, false representations about zoning and denial of access for lawful use of its property by itself and its tenants, that any further attempt to work with the Village of Dolton to use its property lawfully (which would benefit the families of the community) were fruitless.

36. That Plaintiff has been unable to find a commercial tenant to rent the subject property since the community is aware of the Village's actions.

37. That Plaintiff has become liable for property taxes it otherwise would not have had the Defendants not used political strong-arm tactics and unethical solicitations to deny the lawful use of the property.

38. That Plaintiff has lost hundreds of thousands of dollars in rent it otherwise would have had if the Defendants not used political strong-arm tactics and unethical solicitations to deny the lawful use of the property.

39. That the zoning/permits and license issues the Defendants claimed Plaintiff and its tenants were unable to obtain were a pretext for discriminating against Plaintiff and the business model for the subject property.

40. That the discriminatory practices and due process obstructions that occurred from 2009 through 2013 were ongoing, continuous and a pattern and practice of unlawful activity engaged in by Defendants to deny Plaintiff its Constitutional Rights.

41. Lewis supervised, conspired with, and directed Village Manager Bert Herzog, Building Commissioner Donald Hoard, Housing Director Billy Morgan and Village Clerk Judith Evans to unlawfully deny Plaintiff's and its tenant's lawful use of the subject property.

42. That Plaintiff has a clear and ascertainable property right and interest in the lawuful use of the property it sought and licenses for said uses which were refused, obstructed and prevented by the Defendants from obtaining.

<u>COUNT I - DEPRIVATION OF DUE PROCESS VIA 42 U.S.C. § 1983</u>

43. Plaintiff repeats, re-alleges and incorporates by reference the factual allegations of paragraphs 1-42 as if fully set forth herein.

44. Defendants Lewis, Evans, Herzog, Hoard and Morgan, individually and jointly, caused the wrongful denial of Plaintiff's lawful use and enjoyment of property rights by depriving it of its constitutionally guaranteed right to due : process under the Fourteenth Amendment to the U.S. Constitution.

45. Defendants the Village of Dolton, Lewis,· Evans, Herzog, Hoard and Morgan as Dolton's policy makers were the moving forces behind the deprivation of Plaintiff's Constitutional rights and resulting injuries. The actions of Defendants the Village of Dolton, Lewis, Evans, Herzog, Hoard and Morgan in depriving Plaintiff of its Fourteenth Amendment rights and in denying due process under the law were the direct and proximate cause of Plaintiff's loss.

46. As a result of the aforementioned violations of 300 W. Sibley's right to due process by the Village of Dolton, Lewis, Evans, Herzog, Hoard and Morgan, Plaintiff suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of use of the property, substantial loss of income, loss of earnings and loss of the enjoyment of the property.

WHEREFORE, Plaintiff demands judgment against all Defendants and for all legal and equitable relief available pursuant Section 1983, including attorneys' fees, punitive damages compensatory damages, litigation expenses and cost of suit

## COUNT II - DEPRIVATION OF EQUAL PROTECTION VIA 42 U.S.C. § 1983

47. Plaintiff, re-alleges and incorporates by reference the factual allegations of paragraphs 1-42 as if fully set forth herein.

48. Plaintiff should have enjoyed the same rights and privileges as available to all citizens equally as guaranteed in the United States Constitution.

49. Plaintiff was part of an identifiable class of applicants and business owners for a business license-those businesses owned by non-African Americans.

50. That Plaintiff had a clear and ascertainable property interest the licenses sought and use of the property Defendants, individually and collectively, refused and obstructed due to its owner's race, non-African-American.

51. Defendants did not have lawful authority from any source to engage in the aforesaid actions.

52. Defendants' aforesaid discriminatory actions were due to Plaintiff's owner's membership in the class applicants that was non-African American.

53. Defendants acted under color of law in depriving Plaintiff of its Fourteenth Amendment right to equal protection as secured by the Constitution of the United States.37. As a result of the aforementioned intentionally discriminatory acts of Village, Lewis, Evans, Herzog, Hoard and Morgan, 300 W. Plaintiff suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of use of the property, substantial loss of income, loss of earnings and loss of the enjoyment of the property.

WHEREFORE, Plaintiff demands judgment against all Defendants and for all legal and equitable relief available pursuant Section 1983, including attorneys' fees, punitive damages, compensatory damages, litigation expenses and cost of suit.

### COUNT III -MONELL CLAIM

54. That Plaintiff repeats, re-alleges and incorporates by reference the factual allegations of paragraphs 1-42 as if fully set forth herein

55. The aforementioned discrimination and violation of Plaintiff's Constitutional rights was part of a custom, policy and practice espoused by Defendants, all of whom were policymakers at the Village of Dolton.

56. As a result of employing the custom, policy and practice espoused by Defendant policymakers, 300 W. Sibley suffered, and will likely continue to suffer grievous harm including, without limitation, loss of use of the property, substantial loss of income, loss of earnings and loss of the enjoyment of the property.

WHEREFORE, Plaintiff demands judgment against all Defendants and for all legal and equitable relief available pursuant Section 1983, including attorneys' fees, punitive damages compensatory damages, litigation expenses and cost of suit.

### JURY DEMAND

46. 300 W. Sibley demands trial by jury pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 a(c)(l).

                                                Respectfully Submitted:
                                                s/Bryan T. Butcher
                                                One of the Attorneys for Plaintiff

Bryan T. Butcher
McKnight, Kitzinger & Pravdic, LLC
117 N Jefferson Street, Suite 301
Chicago, Illinois 60661
(312) 463-9400
bbutcher@mkplawyers.com